# PRACTICE REPORTS.

## SUPREME COURT.

WILLIAM G. FARGO as president of THE AMERICAN MERCHANTS' UNION EXPRESS COMPANY, appellant agt. James H. McVICKER, respondent.

Joint stock associations existent in this state, exercising such privileges as are given them by the statutes of this state, and suing or being sued, in the name of their president or secretary, as to all questions relating to parties to suits in or to be removed into the courts of the United States, are to be regarded as under the same rules as apply in such cases to corporations.

Where such joint stock association has brought action in a court of this state in the name of its president, and application is made by the defendant, a citizen of another state, to remove the same into the circuit court of the United States under the acts of congress of 1789 and March, 1867, such application cannot be defeated upon the ground that some of the stockholders of the joint stock association are citizens of the state of which the defendant is also a citizen.

The character of such joint stock associations, in corporate aspect, considered.

Where a special term of the supreme court has granted an order removing a cause under the acts of congress referred to into the U. S. circuit court, &c., is such an order appealable to the general term? This question also considered.

*Erie General Term.*

MARVIN, BARKER *and* LAMONT, *Justices.*

APPEAL by the plaintiff from an order made at special term.

This action was originally brought in the supreme court of the state of New York, by William G. Fargo as president of The American Merchants' Union Express Company, against a citizen of the state of Illinois. The American Merchants' Union Express Company is a joint stock association; and the action was brought under the provisions of the act of 1849, by which, " any joint stock company or association may sue or be sued in the name of the presi-

dent or treasurer," &c.   ( *Sess. Laws* 1849, 389, 3 *R. S. 5th ed.*,777.)

The defendant applied to a special term of the supreme court for the removal of the action into the circuit court of the United States, under acts of Congress—the act of 1789, and the act of March, 1867.

The application to remove the cause was opposed upon an affidavit showing that certain *stockholders* in the company were citizens of other states than the state of New York.

The special Term granted the application to remove.

No measures to stay proceedings under the so-called order of the special term have been taken. No point is made as to the regularity of any of the proceedings, and the main question, therefore, to be considered is: can the defendant in such a case compel the removal of the cause into the U. S. circuit?

A preliminary question also arises as to the power of the general term of the supreme court to entertain appeal from the so-called order of the special term.

CLARENCE A. SEWARD and GEORGE B. HIBBARD, *counsel for defendant.*

*First*—No appeal can be heard at general term from this so-called order of the special term.

I. The removal of the cause into the circuit court is at least substantially, (and it is claimed in every legal effect, *point second*), by operation of law. The sole duty of the supreme court is stated by the acts of 1789 and 1867. The acts provide that the citizenship of the parties, and the amount of the " matter in dispute," are to be made to " appear to the *satisfaction* of the court, and that the sufficiency of the surety is to be determined by the state court. This is all that the statute requires that court to do—all it can do. When it has made decision as to these things it has ended its power. Its sole power in this respect is given by

the acts of congress. A court of general jurisdiction, it has no power to deny its remedies to any party seeking to avail himself of its jurisdiction, except in pursuance of these and similar acts of congress. Its duty beneath these acts is to determine certain things. When it has determined those things; when it is "satisfied" certain things exist, it becomes its duty, in the language of the statute, to "accept the surety and proceed no further in the cause." No order for a removal of the cause is necessary. It is not contemplated to be made by either statute. The court acting solely beneath these statutes is not given power to make any order. Although the decision of the court in this case may adopt the language of an order, it is not an order. It is destitute of all force, in so far as it orders anything, and therefore is no order in any sense. It is but a decision—a determination of the court—the statement of its satisfaction as to certain things. It certainly is not an order within the definition of the Code. The Code defines an order to be a "direction of a court or judge." (*Code*, § 400.)

The decision of the only matters competent for the state court to decide under the acts of congress can in no sense be called "directions." They are no more "directions" than is the approval of the surety to an undertaking a "direction," and no more the subject of appeal.

The Code has only provided (except from judgments, which of course has nothing to do with this case) for appeal from such orders as it defines. As the special term in no sense made such an order, in no sense gave any effectual direction—(the effect following from its conclusions)—the Code has failed to provide for appeal from any such decision, (*Code*, § 349, *and the cases cited in Voorhies' Code*, 8*th* ed., 680), and of course, therefore, this appeal will not lie.

Nor does any appeal lie under any provision of the Code, even if this be an order. The section providing for appeals from orders (§ 349), can only apply to appeal from this so-

called order, on the ground that it affects a "substantial right." This, the court of appeals, in precisely such a case, has decided that such an order does not do—that it does not affect a substantial right. (*Illinois* agt. *N. Y. and N. H. R. R. Co.*, 3 *Kern.*, 597.)

II. The matters determined by the state court, may be said to have been substantially ministerial in their character, and are either ministerial or to be determined in the discretion of the court. As such, decision upon them is not the subject of appeal.

1. A mandamus can issue from the circuit to the state court in such cases, to compel the transmission of the record, &c., from the state court. (*The People* agt. *The Judges*, 2 *Denio*, 197 ; *Spraggins* agt. *The County Court*, 1 *Cooke*, 160; *Hopper* agt. *Kalkman*, 17 *California*, 517 ; *Campbell* agt. *Wallen, Lessor*, 1 *Mart. and Yerg.*, 268; *In re Turner*, 20 *Leg. Int.*, 4; *Board of Com. of Knox. Co.* agt. *Aspinwall*, 24 *How.* (*U. S.*), 376 ; *Supervisors* agt. *United States*, 4 *Wallace*, 435 ; *Walkley* agt. *City of Muscatine*, 6 *Wallace*, 481.)

The very fact that the circuit court could thus compel the transmission of the record, &c., determines the question that the only authorized action of the state court, is substantially ministerial in its character. Certainly a writ of mandamus cannot issue to compel the transmission of the record, if the party seeking to have the cause removed could obtain his remedy by appeal from a decision that he was not entitled to have the cause removed. Nor would the court issue a writ of mandamus, which, in some measure, implies censure, (*Ladd* agt. *Tudor*, 3 *W. and M.*, 325), and which it has a discretion to refuse (*Ex parte Fleming*, 4 *Hill*, 581 ; *In the Matter of Van Rensselaer*, 1 *Cow.*, 501 ; *Fish* agt. *Weatherwax*, 2 *John. Cas.* 217 ; *Note*), if remedy could be had on appeal. In the comity to be observed between the state and the federal courts, the circuit would not permit the issuing of the writ.

That the state court, in such matters, acts entirely in a substantially ministerial capacity, is evident. Certainly it cannot act as a court of the state of New York. It but exercises certain powers given it by act of congress. As has been said, it is a court of general jurisdiction, and cannot deny its remedies to any party invoking them, except in pursuance of some act of congress. Congress cannot confer jurisdiction on the courts of this state, *as courts.* (*Martin* agt. *Hunter's Lessee*, 1 *Wheaton*, 304, 330; *The U. S.* agt. *Lathrop*, 17 *J. R.*, 3; *In re Bruni*, 1 *Barb.*, 187.)

If congress could confer such jurisdiction, it could interfere with such jurisdiction—limit it—deny it.

It follows that, in this respect, the state court but fulfills a ministerial duty, and its action cannot be the subject of review in that court.

2. The matters to be determined by the court, are matters only to be established, in the language of the acts of congress, to the "satisfaction" of the court. The state court, most certainly as to the questions of the amount of the matter in dispute, and the sufficiency of the surety, in the exercise of its discretion, is to be only "satisfied." When satisfied, it must "accept the surety and proceed no further in the cause." It really makes no order and, of course, renders no judgment. Aside from the fact that the Code provides no appeal save from orders and judgments, it certainly would be an anomaly, which should, in any court, permit appeal, or any review of a simple conclusion of a court which it was "satisfied" it should reach, a conclusion upon which it took no action, made no order which could be called an order, and rendered no judgment. That appeal will not lie from even an order made in the exercise of judicial discretion is, of course, familiar law. Much less can it lie from such determination as the state court is only empowered to make upon such application as was made in this case. (*Carey* agt. *Cobbett*, 2 *Yeates*, 277.)

3. Were the plaintiff in such cases remediless in case

wrong determination were reached by the state court, of course the application of the views here presented would work hardship. He is not remediless as will be subsequently shown.

III. No appeal lies in the state court, for the reason that the cause is by the order of the court (if the decision of the court sought to be appealed from can be called an order), removed from the state court and is no longer pending in it. If the action be not pending in the state court, (whether by order of removal or operation of law can make no difference), of course no appeal can be taken therein. The application of this rule can work no hardship for the reason that the plaintiff, claiming that the cause has been improperly removed, may and can seek his remedy in the court where the cause is after its removal.

1. The appeal is from the so-called order of the special term of the supreme court establishing the facts, upon the establishment of which the state court is bound to accept the surety, &c. If the cause be then removed by opera- tion of law certainly it is not pending in the state court. Waiving that question, however, it is sufficient to say that the state court has by its so-called order ordered the removal of the cause, that the record be sent to the circuit, and the circuit has received the cause by its own express order. The cause itself and the proceedings in it—its essence and the forms and substance in which it only can exist,—its soul and body, so to speak—are no longer in the state court. As no cause is pending in the state court, of course no appeal can be there taken or heard, for there is no pend- ing cause in which there can be any such appeal. It may be said, in pure theory, that there is no record remaining in the state court which can be sent up to the general term for its inspection so that it may be ascertained what are the questions sought to be presented on the appeal.

2. It is familiar doctrine that in such and kindred cases, the record and the cause are removed when the proceedings

Fargo agt. McVicker.

for removal are perfected, (and proceedings under this so-called order of the special term were not stayed), and cer tainly when the court to which it is sought to remove the cause, whether it be by appeal, or writ of error, or certiorari, or by operation of law, has received the cause and its record.

It is equally familiar doctrine that thenceforth all action in the cause must be taken, and all remedy sought in the court where the cause and its record are. This point can be sustained by a multitude of authorities besides those here indiscriminately cited. (*Lloyd* agt. *Skutt,* 1 *Douglas,* 250 ; *Acount* agt. *Swift,* 1 *Lord Raymond,* 329 ; *Barnum* agt. *Seneca Co. Bank,* 6 *How. Pr. R.,* 82 ; *Bradley* agt. *Van Zandt,* 3 *Code R.,* 217; *The Josephine,* 1 *Abb. Ad. R.,* 481 ; *Wylie* agt. *Cox,* 14 *How., (U. S.)* 1 ; *Stafford* agt. *Union Bank,* 16 *How., (U. S.)* 135, 138 ; *Kanouse* agt. *Martin,* 15 *How., (U. S.)* 198 ; *Gordon* agt. *Longest,* 16 *Peters,* 97 ; 2 *Burrill's Practice,* 249, &c.)

Suppose the order of the special term should be reversed by the general term, would such decision recall to the state court the cause already removed to the circuit court? What possible effect could such decision have upon the circuit? Most certainly it could not be operative upon the circuit to cause it to send back the cause to the state court. Nor could it be operative to recall the cause. Beyond all question the cause, under the executed order of the special term, is now in the circuit. After reversal of that order, if it be reversed, where will the cause be ? in which court ? It is in the cir cuit, and can only be got back to the state court by the or der of the circuit remanding it to the state court.

3. It has been directly held that when the cause has been thus sent to the circuit, the state court has lost all control over it. (*Livermore* agt. *Jenks,* 11 *How.,* 479 ; *Jones* agt. *Seward,* 41 *Barb.,* 269, 273 ; *Akerly* agt. *Vilas,* 8 *Law Reg. N. S.,* 229.)

4. The circuit has power to so remand the cause if the ·

special term of the state court erred in its conclusion. In that court, where the cause is, the plaintiff must seek his remedy. (*Hubbard* agt. *The Northern R. R. Co.*, 3 *Blatch.*, 184; *Ward* agt. *Arredondo*, 1 *Paine C. C. R.*, 410; *New Jersey* agt. *Babcock*, 4 *Wash. C. C. R.*, 344; *Urtetiqui* agt. *Darcy*, 9 *Peters*, 692.)

*Second*—The cause is not in the state court. It is in the circuit court (aside from the effect of the so-called order of the state court) by operation of law. As the cause is not in the state court, that court can have no control over it,— can "proceed no further in the cause."

I. Whatever it may be necessary to claim, or whatever may be well claimed in another case, it is plain that in this case every statutory requisite was complied with, and that the cause is removed out of the state court by operation of law. At most, all that is necessary in the state court is the establishment of certain things, the compliance with certain statutory requisitions and the state court can proceed no further in the cause.

When the requisite citizenship of the parties and the amount in controversy are established to the "satisfaction" of the state court, &c., the statute is imperative that it "shall be the duty of the state court to accept the surety and proceed no further in the cause." All necessary things have been established in this case to the "satisfaction" of the court. The statute has imposed the consequent duties upon the court. The cause is removed by operation of law into the circuit, for the statute says it "shall there proceed in the same manner as if brought there by original process." This must be apparent from the language and the object of the statutes.

II. But that the cause is so removed by operation of law is decided directly in several cases, necessarily, but indirectly in others. (*Livermore* agt. *Jenks*, 11 *How. Pr. R.*, 479; *Jones* agt. *Seward*, 41 *Barb.*, 259, 273; *Fisk* agt. *Union P. R. R. Co.*, *U. S. Circuit Court, S. Dict. N. Y.*,

*Judge* BLATCHFORD, *New York Newspapers, April* 7, 1869; *Mathews* agt. *Lyal,* 6 *McLean,* 13 ; *Gordon* agt. *Longest,*16 *Peters,* 97 ; *Kanouse* agt. *Martin,* 15 *How.* (*U. S.*) 198.)

III. Beyond all question the appeal to the general term therefore cannot be sustained. The operative thing, the force of the statute which has removed the cause from the state court and positively forbidden its further action, is certainly not the subject of appeal. To permit effectual appeal from conclusions merely, from certain conditions, so to speak, which are required to precede the operation of the law, effectual in itself, would be an anomaly in juris-prudence.

It follows that the cause being in the circuit by operation of law must there proceed, or be thence remanded by the circuit itself.

*Third*—The decision of the special term of the supreme court was right. The action must, under the very terms of the acts of congress, be regarded as "commenced by a *citizen* of the state in which the suit is brought against. a citizen of another state," to employ the language of the act of 1789 ; and the controversy must be regarded as pending between "a *citizen* of the state in which the suit is brought and a citizen of another state," in the language of the act of 1867.

I. Either Mr. Fargo, or the company of which he is president, must be regarded as the party plaintiff. If Mr. Fargo be the plaintiff, the decision of the special term, is of course right.

1. It cannot be claimed that the fact that other parties had stock in the company has anything to do with the question. It no where appears, that such parties had any interest, joint or in common, with Mr. Fargo. There is nothing to show that Mr. Fargo was a stockholder in the company, *nor does the act, in pursuance of the provisions of which the suit was brought, require that he should be a stockholder; to be president of the company.* It does not appear, therefore,

that Mr. Fargo could have been joined with any other party as plaintiff in bringing the action.

2. Mr. Fargo, therefore, has brought the suit, if he be the plaintiff, in a representative capacity, not as a stockholder, and by virtue of the act which permits the "joint stock company or association," so to sue in the name of its president. The second section of the act designates him as "the nominal *plaintiff*" in the suit. (*Sess. L.*, 1849, 389, 3 *R. S.*, 5th ed., 777. And see *especially, Wormwell* agt. *Haithlone*, 6 *Bing.*, 19 *E. C. L.*, 301; *Bartlett* agt. *Pentland*, 1 *Barn. and Ad.* 702, 20 *E. C. L.*, 757; *Harrison* agt. *Timmins*, 4 *Mees. and Wels.*, 510.)

As such, he is the party to the record—the plaintiff in the action; and it has been most·explicitly held that in such and kindred cases, the "party" is the party to the record, whether he sue in his own right or in representative capacity. (*Bank U. S.* agt. *Planters' Bank*, 9 *Wheat.*, 904; *The Governor* agt. *Madrazo*, 1 *Peters*, 110; *Gill* agt. *Stebbins*, 2 *Paine, C. C. R.*, 417; *Chappedelaine* agt. *Decheneaux*, 4 *Cranch*, 306; *Childress* agt. *Emery*, 8 *Wheat.*, 642.)

The interest of other parties in the stock of the company, therefore, certainly has nothing to do with Mr. Fargo's character upon the record. He takes his character there utterly irrespective of the stockholder of the company, for a president of a joint stock company may have no community of interest with the stockholder.

If Mr. Fargo be the party plaintiff, of couse, therefore, and under express authority, the decision of the special term was right.

II. If the "joint stock company or association" be the plaintiff, the decision is equally plainly right.

1. As has been said with respect to the possible joinder of any stockholder with Mr. Fargo, it can have nothing to do with the question of who is the party to the action, for, as the president of such an association, need not be a stockholder, it does not follow that Mr. Fargo could have joined

with any other person in bringing this suit in any form; so it may be said that the citizenship of the stockholders of the company has nothing to do with the question. The action is brought by Mr. Fargo, as plaintiff, in the interests of others, of course; or by the *company* or *association* in his name, irrespective of the stockholders as such.

2. The action is brought, in this respect, by the company in the name of its president. The company is a *corporation*, and the corporation must be regarded as a citizen of the state which gives it its corporate character. The company, unless Mr. Fargo be the plaintiff, is the plaintiff in the action.

*a.* The action, in this view, is brought by the company, as appears by the very terms of the act itself.

The language of the first section of the act, in providing that the company may sue, &c., &c., determines that it is the company which brings the action. In the second and fourth sections, the company is also plainly regarded as the party. (*Sess. L.*, 1849, 349.)

*b.* The company is the party, and is a corporation, and must be conclusively regarded as a citizen of the state from which it derives its corporate character.

If a corporation it must be so regarded. (*Point third.*)

The company is a corporation.

This is apparent without elaborate discussion of the point, which, however interesting its investigation might be, will not be here even attempted.

By act of 1849, and by the subsequent acts of 1851, 1854, 1867, and 1868, (*Sess. L.* 1849, 389; *Sess. L.*, 1851, 838; *Sess. L.*, 1854, 558; *Sess. L.*, 1867, 576; *Sess. L.*, 1868, 599), such companies are given every attribute of corporations. They are expressly clothed with all corporate powers and privileges (except that their members are not exempt from individual liability for debts of the company, which exemption, however, was never a necessary concomitant of corporate existence; and besides, the partial and

indeed complete liability of stockholders for debts of un-
doubted corporations of which they are members, exists in
many instances) except the express power to adopt a com-
mon seal, which, however, such companies can adopt for
themselves—for that is a power incident to every corpora-
tion, (*Angell and A. on Corp.*, 8th ed., §§ 110, 117,) or, if
they be corporations, are given express legal power to adopt.
(1 *R. S.*, 599.)

1. They can sue and be sued in a name not necessarily
the name of a member, and suit thus brought, may be
continued in the name of the successor of the nominal
party.

2. The property of the company may be represented
by shares of stock, which stock may be increased or
diminished.

3. The affairs of the company may be managed by a
board of directors.

4. The death of a member works no change in the
company.

5. Such associations have a legal entity, capable of per-
petual existence, of that succession which is called the
immortality of corporations, and is the essence of corporate
being.

6. They can contract in a name in significance and legal
effect a corporate name. (*Anonymous*, 1 *Salkeld*, 191 ;
*Smith* agt. *The Plank Road Co.*, 30 *Ala.*, 650 ; *Angell and
A. on Corp.*, §§ 99, 100.)

7. They can take and hold real estate and other property
in perpetuity.

The act of 1867, could only have been intended to apply
to corporations. It limits the power of such associations
to hold real estate. It provides that they shall hold no
more than is necessary for their business. The limitation
has for its object the very object of the old statutes of
mortmain, to prevent powerful corporations from absorbing
and holding land in perpetuity. Certainly no such limita-

tion could be intended for mere partnerships. (*Sess. L.,* 1867, 576.)

Nor does any act forbid their being corporations. The act of 1849, provides that nothing therein contained shall be construed to confer on the companies any of the rights or privileges of corporations, except as *therein specifically provided;* and the act of 1854, declares that no court shall so construe that act, as to give such associations any rights and privileges of corporations. These acts, and the others referred to, however, give all the rights, privileges and attributes of corporations to the associations, denying the common (but far from universal) privilege of exemption from individual liability to the members. Thus created, thus given right, privilege and power, it is apparent (especially as the legislature has constitutional power to create corporations by general law) that these associations must be regarded as corporations.

In pure logical precision, nothing can be known of anything except through its attributes. These associations have all the attributes of corporations. In strict consequence, therefore, it cannot be said they are not corporations.

Such companies come within every definition of what costitutes a corporation. They have been expressly decided to be corporations in well reasoned opinions. (1 *Blackstone's Com.,* 472, 485 *American Notes; Angell and A. on Corp.,* § 110; *Sanford* agt. *Supervisors,* 15 *How.,* 172; *Waterbury* agt. *The Am. N. E. Co.,* 50 *Barb.,* 157; *and see the line of decisions respecting the character of banking associations from The People* agt. *The Bank of Watertown,* 1 *Hill,* 616; *to Robinson* agt. *The Bank of Attica,* 21 *N. Y.,* 406.) Such associations are made corporations by the constitution of the state. (*Constitution, art.* 8 §§ 1, 3.)

If the company be a corporation it must be conclusively regarded as a citizen of the state which has given it its corporate character, and of course the decision of the special term was right.

*Fourth.*— If the company be not technically and completely a corporation in all senses, it is a *quasi* corporation, and must be conclusively regarded as a citizen of the state of New York upon the principle upon which undoubted corporations are so regarded. The question is simply as to the *citizenship* of the party—must the plaintiff in this suit (whoever or whatever the plaintiff may be) be conclusively regarded as a *citizen* of the state of New York?

I. The company in this case must be conclusively regarded as a citizen of New York.

1. It is at least a *quasi* corporation—an association of individuals exercising far beyond, and far other than natural powers, rights or privileges. Of this there can be no doubt. (*Angell & A. on Corp.*, 8th ed., § 25, *and cases cited.*)

2. The most technically and completely constituted corporation is not a " citizen." It was originally held by the supreme court of the United States that as to all questions respecting the jurisdiction of the courts of the United States, the courts would look through the artificial being created by the law, (and which was not a citizen,) and beyond the corporate character, to ascertain the citizenship of the members of the corporation; and unless all such members were citizens of another state than the state of which the opposing party was a citizen, deny jurisdiction. The doctrine was found not practical and unsound in principle. While the supreme court has adhered to its original doctrine that corporations are not citizens, and that members can alone have the character of citizenship, yet it is held conclusively that all parties, upon questions as to the citizenship of parties to suits, are estopped from denying that the members of a corporation are other than citizens of the state which gave the aggregate individuals their corporate character. In the language of TANEY, C. J., *in Covington* agt. *Shephard*, 20 *How.*, 227, 233, " the members of a corporate body must be presumed to be citizens of the state in which the corporation is domiciled, and all parties

are estopped from denying that fact." (*See the long line of decisions upon this most important question from The Hope Ins. Co.* agt. *Boardman,* 5 *Cranch,* 517, *and The U. S. Bank* agt. *Deveaux,* 5 *Cranch.* 61, *to The Ohio and M. R. Co.* agt. *Wheeler,* 1 *Black,* 286; *and especially* (*besides those above referred to*) *the intermediate cases of Louisville C. C. R.* agt. *Letson,* 2 *How.,* 497; *Marshal* agt. *The B. and O. R. R. Co.,* 16 *How.,* 314, 328; *Covington, D. C.* agt. *Shephard,* 20 *How.,* 227, 233).

3. Upon the same principle it must be decided that when this *quasi* corporation, this aggragate of individuals brings suit, as this is brought, in the exercise of a privilege given by the state in which the suit is brought, although the *quasi* corporate entity cannot have the character of citizenship, its members must be conclusively deemed citizens of the state giving the privilege, and all parties must be estopped from denying that they are citizens of that state. (*See the cases last referred to and particularly The Cov. D. Co.* agt. *Shephard,* 20 *How.,* 227, 232.)

That the statutes have created a *quasi* corporation—a legal entity—in giving such rights, privileges and powers to these associations, is as plain as that the rights, privileges and powers exist and are beyond natural power to hold or enjoy. That entity cannot be a " citizen " any more than can a corporation be a " citizen." The character of citizenship necessarily cannot inhere in either entity so entirely artificial. The same principle that estops all parties from denying that the members of a corporation are citizens of any state, other than that which created the corporation, must estop the members of a joint stock association—likewise a legal entity—from denying that they are citizens of that state, which by grant of right, privilege and power has created that legal entity.

Unless this doctrine be held, no party will have power to compel this company to litigate in the courts of the U. S. in many states.

*Fifth.*—If the state statute but gives the company the privilege of suing in the name of its president or secretary, in the state court, yet, for the purposes of this case in either court, Mr. Fargo must be regarded as the party. He is a citizen of New York, and that, in this view, is all that is material.

1. Without the state statute, should Mr. Fargo commence this suit, it is familiar doctrine, it would be well brought for all the associates (certainly if he himself, in fact, is a member of the company), unless the defendant should take advantage of the nonjoinder of other parties plaintiff—an advantage in the state courts only to be taken by answer or demurrer. (*Code,* § 144,   47.)

2. With reference to questions of jurisdiction dependent on citizenship, defenses must be made in the first instance, and if not made in the first instance, are waived. If the opposing party take a step inconsistent with making such defense, he will be deemed to have waived the right to make such defence, and within the principle of one case cited below, will be estopped from setting it up, even if the state statute be not effective in giving the company right to sue in the name of an officer of the company, in the circuit of the U. S.  Yet, as the defendant has removed the case into the circuit, he cannot take advantage (even if the state statute is ineffective there) of the non-joinder of other members of the association. He has regarded the party to the record as the party, and the act is conclusive as to all questions relating to jurisdiction. (*Stokes* agt. *Mowatt,* 1 *U. S. Law. J.,* 309; *Smith* agt *Kenochen,* 7 *How., U. S.,* 216; *Shepard* agt. *Graves,* 14 *How., U. S.,* 505, 512; *Livingston* agt. *Storey,* 11 *Peters,* 351 ; *And see the cases of Smith* agt. *Swormstadt,* 16 *How., U. S.,* 289; *Marshal* agt. *Balt. and O. R. R.,* 16 *How., U. S.,* 314, 328.)

The plaintiff (certainly, if the association be not a corporation) was not compelled to bring this action as it was brought, for the statute is probably merely permissive, and

the suit probably might have been brought in the name of all the associates.

As the suit is brought as this was, certainly such privileges cannot be claimed, as could be claimed if all the members of the company had been made plaintiffs. If it was desired to prevent removal into the circuit, the suit should have been brought (if it could be) in the name of all the associates. If it could not be thus brought, beyond question, the association must, in determining all questions as to parties, be conclusively held to be one indivisible entity, existent solely where the entity was created.

BOWEN *and* ROGERS, *for plaintiff.*

*By the court,* LAMONT, J. Two questions are made in this case. The plaintiff claims that this action is not removable from the state court into the circuit court of the United States under the act of congress of 1789, or the act of 1867. The defendant, on the contrary insists that the cause is removable, and that the order of the special term of this court, staying the plaintiff's proceedings and sending the case to the said circuit court, is not an appealable order.

It is not disputed that all the formalities necessary to the removal have been complied with by the defendant, if the case is one that falls within the provisions of either act of congress referred to. The defendant is a citizen the state of Illinois.

If the plaintiff is a citizen of the state of New York, or if the stockholders composing the American Merchants' Union Express Company are to be regarded as the real plaintiffs, and they are either in fact or by construction of law citizens of the state of New York, then the order for the removal of the cause was properly made.

William G. Fargo is himself a citizen of the state of New York. If the suit be his, the action is removable.

If the company, or the shareholders who compose it, be
the real plaintiffs, by the authorized and legal style and title
assumed in the complaint, then the question arises, whether
those individuals represented by such title in this action by
virtue of the statutes of this state, are for the purposes of the
jurisdiction of the federal courts ·to be treated as citizens
of the state of New York.    This question arises under the
constitution and the laws of the United States, and for its
true and final determination we look to the authoritative
arbiter of all such questions, the supreme court of the
United States.    That court holds that a corporation is not
itself a citizen, but that for all purposes of the jurisdiction
of the federal courts, the stockholders who compose the
corporate body by and under the name given them by the
statutes of a state are to be treated as citizens of that state,
and that they are estopped from denying that they are citi-
zens of the state whose laws alone, empowered them to
appear in the courts of justice by the name of their legal
christening under the state laws.    Neither in the constitu-
tion of the United States nor in the acts of congress referred
to, is the word corporation or any other word of similar
import, employed in connection with the subject under con-
sideration.    The term used, is citizen.

Controversies between citizens of different states (*U. S.
Const., art.* 3, § 2.)

If a suit be commenced in any state court, by a citizen
of the state in which the suit is brought againt a citizen of
another state, &c.    (*Act of* 1789 ;  1 *Stat. at L.* 79 ;  *Act of*
1867 ;  14 *Stat. at L.* 559.)

The same reason that applies to a corporate body applies
with equal force to an associate body ; and the reason is,
that the persons composing each, though multitudinous in
number, and scattered by habitation over many states, are
aggregated by the state laws, under which they appear by
a fictitious name or designation.    They are legalized for
litigious purposes into one artificial body, by which they

are endowed with the new faculty of suing and being sued by the name and style conferred upon them by a state law.

In the present case, the shareholders consisting of several thousand persons, citizens of and residents in various states, including both the states of New York and of Illinois, are embodied, for the purpose of suing and being sued into a new, legal personality by the name used in this action—and this new faculty of acting and appearing in the courts, is given by the laws of the state of New York. (*Chap.* 258; *Statutes of* 1849.)

As to being sued or bringing suits by the fictitious name conferred by the state statute they stand in the same predicament as if they were in all respects a perfect corporation created by such state law. It is the state law itself that gives this multitude of shareholders legal capacity to go into court, whether as plaintiffs or defendants, by a name furnished for that purpose under the state law. In this respect they are the same as a corporate body—whether they be a corporate body, an associate body, a joint stock company, or association, by whatever designation they may be known. The reason why they are treated for the purposes of federal jurisdiction, as citizens of the state whose laws they have invoked to enable them to be and appear by one name and style in tribunals of justice, applies aptly to every aggregation of persons invested by state law, with this faculty of suing and being sued by the new name, which under such statutory provisions, represents the entire body of shareholders. In this particular as party litigant a corporate body and an associate body are identical. The reasoning that applies to one, applies to the other, and that reasoning will be seen at large, in *Marshal* agt. *The Baltimore and Ohio R. R. Co.*, (16 *How. U. S. Rep.*, 325 to 329,) *and see Covington, Draw Br. Co.* agt. *Sheperd et. al.*, (20 *How. U. S. Rep.*, 233.)

In the case first cited, the grounds for the construction of the federal constitution and laws, are given with great

force. (16 *How.*, *U. S. R.*, 326.) Mr. Justice GRIER delivering the opinion of the court, says :

" Now if this be a right, or privilege guaranteed by the constitution to citizens of one state in their controversies with citizens of another, it is plain that it cannot be taken away from the plaintiff by any legislation of the state in which the defendant resides. If A. B. and C. with other dormant or secret partners be empowered to act by their representatives to sue or to be sued in a *collective* or corporate name, their enjoyment of these privileges granted by state authority, cannot nullify this important right conferred on those who contract with them."

Again, *p*. 327. " The necessities and conveniences of trade and business, require that such numerous associates and stockholders, should act by representation, and have the faculty of contracting, suing and being sued in a fictitious or collective name. But these important faculties conferred on them by state legislation for their own convenience, cannot be wielded to deprive others of acknowledged rights. It is not reasonable that those who deal with such persons, should be deprived of a valuable privilege by a syllogism, or rather sophism, which deals subtly with words and names, without regard to the things or persons they are used to represent. Nor is it reasonable that representatives of numerous, unknown, and ever changing associates, should be permitted to allege the different citizenship of one or more of these stockholders, in order to defeat the plaintiffs privilege."

It will be seen in the extracts given, and more fully in the opinion at large, that the whole force of the reasoning, applies to any aggregate body of shareholders authorized by state law to sue and be sued by their collective name, or the name given them for litigious purposes by the state law. " In courts of law," says this learned judge " an act of incorporation and a corporate name are necessary to enable the representatives of a numerous association to sue

Fargo agt, McVicker.

and be sued." And it is for this reason, that reference is so often made to corporations in this and other cases bearing upon the question.

But by the act of 1849, the representatives of a numerous association, are enabled to sue and be sued without the act of incorporation, or the corporate name—but by its equivalent, a legal association and a legitimate statutory name. By this name, the whole collective body of shareholders are represented in the courts. The name represents them, as the corporate name represents all the corporators or stockholders, the name given in each case by the state law for that purpose.

I am of opinion that the present case should be governed by the same principles of law which determine the question of citizenship, in case of corporations authorized by the laws of a state—and that the order appealed from was properly made.

Who is to determine whether this action is removable into the circuit court of the United States? The court of appeals has held that the question of jurisdiction must be decided by the circuit court itself, (*Illius* agt. *The N. Y, and N. H. R. R. Co.,* 3 *Kernan,* 579,) and have pointed out the proper practice to be pursued. If the circuit court refuses to entertain jurisdiction, then the order complained of will be vacated, and the case will proceed in the supreme court.

This course of proceeding avoids all conflict between the state and federal courts, leaves the decision where it constitutionally belongs, and conforms with the views of the court of appeals in a similar case before them where an appeal was dismissed.

It is a doubtful question whether an appeal lies from the special to the general term when the former accepts the surety tendered, and the other formal requisites pointed out by the acts of congress, are complied with by the applicant for the removal, and where the formalities are fully com

plied with and the only question is, whether the U. S. court can entertain jurisdiction of the cause. I think the latter court should be applied to for the decision of that question. If that court entertains the suit, state courts cannot overrule the decision—but if the circuit court declines the jurisdiction, then a motion can be made to vacate the order instead of appealing from it.

My brethren are of opinion the order appealed from, should be affirmed, and it is affirmed, with $10 costs.